# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF KENTUCKY**
**AT LEXINGTON**

| |
|---|
| HANNELORE BOORN<br>on behalf of herself and all others similarly<br>situated,<br>*Plaintiff,*<br><br>v.<br><br>SCIENTIFIC GAMES CORP.,<br>SCIPLAY CORP., and APPCHI MEDIA<br>LTD.<br>*Defendants.* |

Case No. _____

## AFFIDAVIT OF ALISON WHEELER IN SUPPORT OF DEFENDANTS' NOTICE OF REMOVAL

I, Alison Wheeler, declare under penalty of perjury and under 28 U.S.C. § 1746, that the following is true and correct:

1. I am one of the attorneys of record for Defendants Scientific Games Corporation ("Scientific Games"), SciPlay Corp. ("SciPlay") and Appchi Media Ltd., now known as Dragonplay Ltd. ("Appchi Media").

2. I am authorized to execute this affidavit and am competent to testify about the matters contained here based on my personal knowledge. I submit this affidavit in support of Defendants' Notice of Removal.

3. Attached to this affidavit as **Exhibit A** is a true and correct copy of the Complaint filed by plaintiff Hannelore Boorn in Fayette Circuit Court on September 15, 2022, *Boorn, Hannelore v. Scientific Games Corp., et al.*, Case No. 22-CI-02686.

4. On September 23, 2022, SciPlay's registered agent received a Summons and the Complaint by mail. Attached to this affidavit as **Exhibit B** is a true and correct copy of the Summons.

5. On September 23, 2022, Appchi Media's registered agent received a Summons and the Complaint by mail.  Attached to this affidavit as **Exhibit C** is a true and correct copy of the Summons.

6. Attached as **Exhibit D** is a copy of the docket for *Boorn, Hannelore v. Scientific Games Corp., et al.*, Case No. 22-CI-02686 (retrieved on October 17, 2022).  It reflects that the Kentucky Secretary of State made a return to the state court for SciPlay and Appchi Media on September 29, 2022, and for Scientific Games on September 30, 2022.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Signed on October 17, 2022.

Alison G. Wheeler

STATE OF COLORADO          )
                                                   ) ss.
City and County of Denver       )

The attached instrument was acknowledged before me on this ___ day of October, 2022, by Alison G. Wheeler.

My Commission Expires: October 5, 2024          Witness my hand and official seal.

Pamela Franklin Holmes
Notary Public, State of Colorado

PAMELA FRANKLIN HOLMES
Notary Public
State of Colorado
Notary ID # 20164038110
My Commission Expires 10-05-2024

2

# EXHIBIT A

Filed                22-CI-02686        09/15/2022        Vincent Riggs, Fayette Circuit Clerk

A true copy attest        22-CI-02686        09/15/2022        /s/Vincent Riggs, Fayette Circuit Clerk

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CIVIL ACTION NO. 22-CI- 21686

HANNELORE BOORN
on behalf of herself and all others similarly situated,                          PLAINTIFF

v.          **CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL**
*(Electronically Filed)*

SCIENTIFIC GAMES CORP.,                                                    DEFENDANTS
     **Serve:**
     **Scientific Games Corp.**
     **6601 Bermuda Road**
     **Las Vegas, Nevada 89119**

SCIPLAY CORP., and
     **Serve:**
     **Sciplay Corp.**
     **112 North Curry Street**
     **Carson City, Nevada 89703**

APPCHI MEDIA LTD.
     **Serve:**
     **Appchi Media Ltd.**
     **112 North Curry Street**
     **Carson City, Nevada 89703**

********

Plaintiff Hannelore Boorn ("Plaintiff") brings this action on behalf of herself and all

others similarly situated against Defendants Scientific Games Corp., SciPlay Corp., and Appchi

Media Ltd. (collectively, "SciPlay" or "Defendants"). Plaintiff makes the following allegations

pursuant to the investigation of her counsel and based upon information and belief, except as to

the allegations specifically pertaining to herself, which are based on personal knowledge.

**INTRODUCTION**

1.          Defendants own and operate a video game development company. Amongst the

Package:000003 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000003 of 000018

Filed          22-CI-02686     09/15/2022     Vincent Riggs, Fayette Circuit Clerk
A true copy attest     22-CI-02686     09/15/2022     /s/Vincent Riggs, Fayette Circuit Clerk

games Defendants own and operate are popular virtual casino games, including virtual casino games[1] (hereinafter, collectively, the "games" or "casino games").

2.      In these casino games, Defendants offer a multitude of electronic versions of slot machine games.

3.      All of Defendants' casino games operate in essentially the same way. Defendants provide a bundle of free "Coins" or "Chips" to first-time visitors of their virtual casinos that can be used to wager on their slot machine games. After consumers inevitably lose their initial allotment of coins, Defendants attempt to sell them additional coins. For example, purchases start at $4.99 in Quick Hits Casino Slot Games ("Quick Hits").

4.      Freshly topped off with additional coins, consumers wager to win more coins. The coins won by consumers playing Defendants' games of chance are identical to the coins that Defendants sell. Thus, by wagering 80,000,000 coins that were purchased for $4.99, consumers have the chance to win millions of additional coins that they would otherwise have to purchase.

5.      These coins permit consumers to have the privilege of playing Defendants' games.

6.      By operating their virtual casinos, Defendants have violated Kentucky law, which governs Plaintiff's and the Class's claims, and have illegally profited from tens of thousands of consumers. Accordingly, Plaintiff, on behalf of herself and a Class of similarly situated individuals, brings this lawsuit to recover their losses, as well as costs and attorneys' fees.

---

[1] The casino games include, but are not limited to "Quick Hit Casino Slot Games," "Jackpot Party Casino Slots," "Gold Fish Casino Slot Games," "88 Fortunes Slots Casino Games," "MONOPOLY Slots – Casino Games," "Hot Shot Casino Slot Games" and "Blazing 7s Casino Slots Online."

Filed          22-CI-02686     09/15/2022     2 Vincent Riggs, Fayette Circuit Clerk
A true copy attest     22-CI-02686     09/15/2022     /s/Vincent Riggs, Fayette Circuit Clerk

Filed          22-CI-02686        09/15/2022        Vincent Riggs, Fayette Circuit Clerk
A true copy attest        22-CI-02686        09/15/2022        /s/Vincent Riggs, Fayette Circuit Clerk

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action as a court of general jurisdiction.

8.      This Court has personal jurisdiction over Defendants pursuant to KRS § 454.210 (2)(a) because Defendants have transacted business in this Commonwealth and contracted to supply services or goods in this Commonwealth, and Plaintiff's claims against Defendants arise from those acts.

9.      Venue is proper in this County pursuant to KRS § 452.450 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this County, and because the contracts between Plaintiff and Defendants were made and performed in this County.

## PARTIES

10.      Plaintiff Hannelore Boorn is a natural person and a citizen of the Commonwealth of Kentucky, residing in Lexington, Kentucky.  Plaintiff started playing Defendant's Quick Hits casino game in or around November 2015, and made thousands of dollars worth of purchases of virtual currency, which she subsequently gambled and lost, within the applicable five-year limitations period.

11.      Defendant Scientific Games Corp. is a corporation organized and existing under the laws of Nevada, with its principal place of business at 6601 Bermuda Road, Las Vegas, Nevada 89119.  Scientific Games Corp. conducts business throughout this County, the Commonwealth of Kentucky, and the United States.

12.      Defendant SciPlay Corp. is a corporation organized and existing under the laws of Delaware, with its principal place of business at 112 North Curry Street, Carson City, Nevada

Filed          22-CI-02686        09/15/2022        3 Vincent Riggs, Fayette Circuit Clerk
A true copy attest        22-CI-02686        09/15/2022        /s/Vincent Riggs, Fayette Circuit Clerk

Filed            22-CI-02686        09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest        22-CI-02686        09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

89703.  Sciplay Corp. conducts business throughout this County, the Commonwealth of

Kentucky, and the United States.

13.    Defendant Appchi Media Ltd. is a subsidiary of Scientific Games Corp., and

conducts business throughout this County, the Commonwealth of Kentucky, and the United

States.

## FACTUAL ALLEGATIONS

**Free-to-Play and the New Era of Online Gambling**

14.    The proliferation of internet-connected mobile devices has led to the growth of

so-called "free-to-play" videogames.  With free-to-play games, developers encourage consumers

to download and play games for free while selling many low-cost items within the game itself.

Developers aim to recoup their costs (and make a profit) by selling thousands of "in-game" items

that start at $0.99 (purchases known as "micro-transactions") instead of charging an up-front fee.

15.    The free-to-play model has become particularly attractive to developers of games

of chance (e.g., slot machine mobile video games), because it allows them to generate huge

profits.  In 2012, free-to-play games of chance generated over $1.6 billion in worldwide revenue.

16.    With free-to-play games of chance, developers have begun exploiting the same

psychological triggers as brick-and-mortar casinos.  As one respected videogame publication put

it:

> If you hand someone a closed box full of promised goodies, many
> will happily pay you for the crowbar to crack it open. The
> tremendous power of small random packs of goodies has long been
> known to the creators of physical collectible card games and
> companies that made football stickers a decade ago. For some … the
> allure of a closed box full of goodies is too powerful to resist.
> Whatever the worth of the randomised [sic] prizes inside, the offer
> of a free chest and the option to buy a key will make a small fortune
> out of these personalities. For those that like to gamble, these crates

Filed            22-CI-02686        09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest        22-CI-02686        09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

Package:000006 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622387)

Package : 000006 of 000018

Filed          22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

often offer a small chance of an ultra-rare item."[2]

17.  *Game Informer*, another respected videogame magazine, reported on the rise (and danger of) micro-transactions in free-to-play games and concluded:

> [M]any new mobile and social titles target small, susceptible populations for large percentages of their revenue. If ninety-five people all play a [free-to-play] game without spending money, but five people each pour $100 or more in to obtain virtual currency, the designer can break even. These five individuals are what the industry calls whales, and we tend not to be too concerned with how they're being used in the equation. While the scale and potential financial ruin is of a different magnitude, a similar profitability model governs casino gambling.[3]

18.  Academics have also studied the socioeconomic effect free-to-play games have on consumers. In one study, the authors compiled several sources analyzing free-to-play games of chance (called "casino" games below) and stated that:

> [Researchers] found that [free-to-play] casino gamers share many similar sociodemographic characteristics (e.g., employment, education, income) with online gamblers. Given these similarities, it is perhaps not surprising that a strong predictor of online gambling is engagement in [free-to-play] casino games. Putting a dark line under these findings, over half (58.3%) of disordered gamblers who were seeking treatment stated that social casino games were their first experiences with gambling.
> …
> According to [another study], the purchase of virtual credits or virtual items makes the activity of [free-to-play] casino gaming more similar to gambling. Thus, micro-transactions may be a crucial predictor in the migration to online gambling, as these players have now crossed a line by paying to engage in these activities. Although, [sic] only 1–5% of [free-to-play] casino gamers make micro- transactions, those who purchase virtual credits spend

---

[2] PC Gamer, *Microtransactions: the good, the bad and the ugly*, http://www.pcgamer.com/microtransactions-the-good-the-bad-and-the-ugly/ (last visited September 1, 2022)

[3] Game Informer, *How Microtransactions Are Bad For Gaming - Features - www.GameInformer.com*, https://www.gameinformer.com/b/features/archive/2012/09/12/how-microtransactions-are-bad-for-gaming.aspx (last visited September 1, 2022)

Filed          22-CI-02686      09/15/2022          5 Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

Package: 000007 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000007 of 000018

Filed          22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

an average of $78. Despite the limited numbers of social casino gamers purchasing virtual credits, revenues from micro-transactions account for 60 % of all [free-to-play] casino gaming revenue. Thus, a significant amount of revenue is based on players' desire to purchase virtual credits above and beyond what is provided to the player in seed credits.[4]

19.      The same authors looked at the link between playing free-to-play games of chance and gambling in casinos.  They stated that "prior research indicated that winning large sums of virtual credits on social casino gaming sites was a key reason for [consumers'] migration to online gambling," yet the largest predictor that a consumer will transition to online gambling was "micro-transaction engagement."  In fact, "the odds of migration to online gambling were approximately eight times greater among people who made micro-transactions on [free-to-play] casino games compared to [free-to-play] casino gamers who did not make micro-transactions."

## I.      A Brief Introduction to Defendants and Their Games

20.      Defendants are leaders in the interactive gaming industry and have been in the casino and gambling business for over 70 years.

21.      Consumers can play Defendants' casino games by downloading one of their many mobile casino game apps on Apple iOS and Android devices, or by playing the online casino games on Facebook.

22.      Defendants have made large profits through their online gambling games. For example, according to its press release, Scientific Games generated over $823 million in the fourth quarter of 2017 alone.[5]  As explained further below, however, the revenue Defendants

---

[4] Hyoun S. Kim, Michael J. A. Wohl, *et al.*, *Do Social Casino Gamers Migrate to Online Gambling? An Assessment of Migration Rate and Potential Predictors*, Journal of gambling studies / co-sponsored by the National Council on Problem Gambling and Institute for the Study of Gambling and Commercial Gaming (Nov. 14, 2014), *available at* http://link.springer.com/content/pdf/10.1007%2Fs10899-014-9511-0.pdf (last visited Sept. 1, 2022).

[5] *Scientific Games Reports Fourth Quarter and Full Year 2017 Results,* https://www.prnewswire.com/newsreleases/scientific-games-reports-fourth-quarter-and-full-year-2017-results-300606074.html (last visited May. 11.

Filed          22-CI-02686      09/15/2022      [6]Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

Package:000008 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000008 of 000018

Filed          22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

receive from their online casino games are the result of operating unlawful games of chance camouflaged as innocuous videogames.

## II.    Defendant's Online Casino Games Are Illegal Gambling Under Kentucky Law

23.    Consumers visiting the games for the first time are awarded an allocation of free virtual currency (hereinafter "Coins" or "Chips").  These free sample chips offer a taste of gambling and are designed to encourage players to get hooked and buy more chips for real money.

24.    During gameplay, Defendant displays various special offers to consumers via a pop-up screen in order to entice consumers to purchase additional chip at a discounted price. For example, Defendant's Quick Hits casino game's electronic store sells discounted chips ranging from $4.99 to $99.99.



---

20).

Filed          22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

Filed          22-CI-02686     09/15/2022       Vincent Riggs, Fayette Circuit Clerk

A true copy attest          22-CI-02686       09/15/2022         /s/Vincent Riggs, Fayette Circuit Clerk



25.    After they begin playing, consumers quickly lose their initial allotments of Coins. Immediately thereafter, Defendants inform them that they have insufficient coins to place a wager, which prevents them from continuing to play the game.  For example, in Quick Hits, users are presented with the below message:

Filed          22-CI-02686     09/15/2022     Vincent Riggs, Fayette Circuit Clerk

A true copy attest          22-CI-02686       09/15/2022        /s/Vincent Riggs, Fayette Circuit Clerk

Package :000010 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000010 of 000018

Filed          22-CI-02686        09/15/2022        Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022        /s/Vincent Riggs, Fayette Circuit Clerk



26.    To continue playing the games, consumers must purchase additional coins.[6]  For example, consumers are presented with options to purchase additional Coins at prices ranging from $4.99 for 30,000,000 Coins to $99.99 for 2,700,000 Coins in Quick Hits.  *See supra* ¶ 24 (screenshot).

27.    Armed with their new Coins, consumers can resume playing Defendants' games.  If they win Coins, players can use the Coins to continue playing the games.  Inevitably, however, customers eventually lose their entire Coin balance and must spend more money to continue playing.

---

[6] Following Defendants' statewide settlement of analogous Washington-based claims in *Reed v. Scientific Games Corp.*, 2:18-cv-00565-RSL, which does not release any of the claims asserted by Plaintiff here, Defendant has instituted what is referred to in the industry as "continuous play," where when a player runs out of Coins, they are immediately offered a small allotment of additional Coins.  Plaintiff does not concede, at this point, that this change (or any other relief pursuant to the *Reed* settlement) is curative.  But regardless, Defendants' games did not have a "continuous play" option for the overwhelming majority of the applicable five-year limitations period.

Filed          22-CI-02686        09/15/2022        Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022        /s/Vincent Riggs, Fayette Circuit Clerk

Filed            22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest       22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

28.    The decision to sell chips by the thousands isn't an accident. Rather, Defendant attempts to lower the perceived cost of the chips (costing just a fraction of a penny per chip) while simultaneously maximizing the value of the award (awarding millions of chips in jackpots), further inducing consumers to bet on its games.

29.    To begin wagering, players select the "Bet" that will be used for a spin, as illustrated below, which shows one of Defendant's Quick Hits slot machine games. Defendant allows players to increase or decrease the amount he or she can wager and ultimately win (or lose).



30.    Once a consumer spins the slot machine by pressing a "Spin" button, none of Defendants' games allow (or call for) any additional user action.  Instead, the consumer's device communicates with and sends information to Defendants' servers.  Defendants' servers then execute the games' algorithms that determine the spin's outcome.  Notably, none of Defendants' games depend on any amount of skill to determine their outcomes – all outcomes are based entirely on chance.

31.    If a player makes a wager the player can either win and be awarded additional coins or lose and lose the coins.  For example, a player may make a 10,000-coin wager and win 300,000 coins.  In other words, absent the win, the 300,000 coins would have cost the player approximately $0.75 to buy.  Now, however, the newly won coins provide the player additional free plays.

32.    Consumers can continue playing with the coins that they won, or they can exit the game and return at a later time to play because Defendants maintain win and loss records and account balances for each consumer.  Indeed, once Defendants' algorithms determine the

Filed            22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest       22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

Package: 000012 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000012 of 000018

Filed          22-CI-02686     09/15/2022     Vincent Riggs, Fayette Circuit Clerk
A true copy attest     22-CI-02686     09/15/2022     /s/Vincent Riggs, Fayette Circuit Clerk

outcome of a spin and Defendants display the outcome to the consumer, Defendants adjust the consumer's account balance. Defendants keep records of each wager, outcome, win, and loss for every player of the games.

## CLASS ALLEGATIONS

33.     Plaintiff seeks to represent a class defined as all individuals who, in the Commonwealth of Kentucky, spent $5.00 or more within a 24-hour period in one or more of Defendants' casino games during the applicable limitations period. (the "Class").

34.     Specifically excluded from the Class are Defendants, Defendants' officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or Defendants' officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

35.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint.

36.     **Numerosity**. On information and belief, tens of thousands of consumers fall into the definition of the Class. Members of the Class can be identified through Defendants' records, discovery, and other third-party sources.

37.     **Commonality and Predominance**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

Filed          22-CI-02686     09/15/2022     1 Vincent Riggs, Fayette Circuit Clerk
A true copy attest     22-CI-02686     09/15/2022     /s/Vincent Riggs, Fayette Circuit Clerk

Package: 000013 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622387)

Package : 000013 of 000018

Filed          22-CI-02686     09/15/2022     Vincent Riggs, Fayette Circuit Clerk
A true copy attest     22-CI-02686     09/15/2022     /s/Vincent Riggs, Fayette Circuit Clerk

(a)     Whether Plaintiff and Class members' play on Defendants' virtual casino games constitutes gambling under Kentucky law;

(b)     Whether Plaintiff and the Class lost money gambling to Defendants as defined by KRS § 372.010 *et. seq.*; and

(c)     Whether Plaintiff and the Class are entitled to recover their monies spent on Defendants' casino games pursuant to KRS § 372.020.

38.     **Typicality**.  Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through Defendants' wrongful conduct as set forth herein.  Further, there are no defenses available to Defendants that are unique to Plaintiff.

39.     **Adequacy of Representation**.  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

40.     **Superiority**.   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Defendants.  It would thus be virtually impossible for the Class obtain effective redress for the wrongs committed against the members on an individual basis.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also

Filed          22-CI-02686     09/15/2022     Vincent Riggs, Fayette Circuit Clerk
A true copy attest     22-CI-02686     09/15/2022     /s/Vincent Riggs, Fayette Circuit Clerk

Package: 000014 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000014 of 000018

Filed            22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

### CAUSES OF ACTION

### COUNT I
**Violation of KRS § 372.010, *et. seq.***
**(On Behalf Of Plaintiff And The Class)**

41.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

42.    The Commonwealth of Kentucky's "Recovery of money lost at gambling" statute, KRS § 372.020, provides a losing gambler with a first-party cause of action to recover any losses suffered. It reads:

> If any person loses to another at one (1) time, or within twenty-four (24) hours, five dollars ($5) or more, or anything of that value, and pays, transfers or delivers it, the loser or any of his creditors may recover it, or its value, from the winner, or any transferee of the winner, having notice of the consideration, by action brought within five (5) years after the payment, transfer or delivery. Recovery may be had against the winner, although the payment, transfer or delivery was made to the endorsee, assignee, or transferee of the winner. If the conveyance or transfer was of real estate, or the right thereto, in violation of KRS 372.010, the heirs of the loser may recover it back by action brought within two (2) years after his death, unless it has passed to a purchaser in good faith for valuable consideration without notice.

KRS § 372.020.

43.    Defendants' casino games constitute gambling because the players provide consideration (e.g., purchase coins and wager the coins) and by an element of chance (e.g., by spinning a virtual slot machine) create a right to credits and/or other things of value (e.g., additional coins that would otherwise be purchased for cash and that award additional replays).

13

Filed            22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

Filed          22-CI-02686        09/15/2022        Vincent Riggs, Fayette Circuit Clerk
A true copy attest          22-CI-02686        09/15/2022        /s/Vincent Riggs, Fayette Circuit Clerk

44.      As such, Plaintiff and the Class gambled when they purchased coins to wager at Defendants' games.  Plaintiff and each member of the Class staked money, in the form of coins purchased with money, at Defendants' games of chance (e.g., Defendants' slot machines within the games) for the chance of winning additional things of value (e.g., coins that grant additional free plays).

45.      The virtual currency Plaintiff and the Class had the chance of winning in Defendants' virtual casino games are "things of value" under Kentucky law because they are credits that involve the extension of entrainment and a privilege of playing a game without charge.

46.      As a direct and proximate result of Defendants' operation of their games, Plaintiff and each member of the Class have lost money wagering at Defendants' games of chance. Plaintiff, on behalf of herself and the Class, seeks an order (1) requiring Defendants to cease operation of their gambling devices; and/or (2) awarding the recovery of all lost monies, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable.

### COUNT II
**Unjust Enrichment.**
**(On Behalf Of Plaintiff And The Class)**

47.      Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

48.      Plaintiff and the Class have conferred a benefit upon Defendant in the form of the money Defendant received from them for the purchase of Coins to wager at Defendant's online gambling games.

49.      Defendant appreciates and/or has knowledge of the benefits conferred upon it by Plaintiff and the Class.

50.      Under principles of equity and good conscience, Defendant should not be

Filed          22-CI-02686        09/15/2022        Vincent Riggs, Fayette Circuit Clerk
A true copy attest          22-CI-02686        09/15/2022        /s/Vincent Riggs, Fayette Circuit Clerk

Package: 000016 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000016 of 000018

Filed            22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest    22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

permitted to retain the money obtained from Plaintiff and the members of the Class, which

Defendant has unjustly obtained as a result of its unlawful operation of unlawful online gambling

games. As it stands, Defendant has retained millions of dollars in profits generated from its

unlawful games of chance and should not be permitted to retain those ill-gotten profits.

51.     Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any

money Defendant has retained as a result of the unlawful and/or wrongful conduct alleged

herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks

judgment against Defendants, as follows:

(a)     For an order certifying this action as a class action, appointing Plaintiff as
Class Representative, and appointing Plaintiff's counsel as Class Counsel;

(b)     For compensatory damages on all applicable claims and in an amount to
be proven at trial;

(c)     For restitution on all applicable claims and in an amount to be proven at
trial;

(d)     For an order requiring Defendants to disgorge, restore, and return all
monies wrongfully obtained together with interest calculated at the
maximum legal rate;

(e)     For an order enjoining the wrongful conduct alleged herein;

(f)     For other appropriate injunctive and other equitable relief;

(g)     For costs;

(h)     For pre-judgment and post-judgment interest as provided by law;

(i)     For attorneys' fees under the account contracts, the common fund
doctrine, and all other applicable rules and law; and

Package : 000017 of 000018                  Presiding Judge: HON. JULIE M. GOODMAN (622397)                  Package:000017 of 000018

Filed            22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest    22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

Filed          22-CI-02686     09/15/2022     Vincent Riggs, Fayette Circuit Clerk
A true copy attest     22-CI-02686     09/15/2022     /s/Vincent Riggs, Fayette Circuit Clerk

(j)      For such other relief as the court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  September 15, 2022

Respectfully submitted,

*/s/ Philip G. Fairbanks*
PHILIP G. FAIRBANKS
**Mehr Fairbanks Trial Lawyers, PLLC**
201 West Short Street, Suite 800
Lexington, Kentucky 40507
Telephone:  859-225-3731
Facsimile:  859-225-3830
pgf@austinmehr.com

and

**BURSOR & FISHER, P.A.**
Philip L. Fraietta*
Alec M. Leslie*
Matthew A. Girardi*
Julian C. Diamond*
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail:  pfraietta@bursor.com
            aleslie@bursor.com

*Attorneys for Plaintiff and the Putative Class*

* *Pro hac vice* application forthcoming

Package:000018 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000018 of 000018

Filed          22-CI-02686     09/15/2022     16 Vincent Riggs, Fayette Circuit Clerk
A true copy attest     22-CI-02686     09/15/2022     /s/Vincent Riggs, Fayette Circuit Clerk

# EXHIBIT B



**null / ALL**
**Transmittal Number: 25628496**
**Date Processed: 09/27/2022**

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | John L. Cuddihy<br>Light & Wonder Inc. (Formerly Scientific Gaming)<br>6601 Bermuda Rd<br>Las Vegas, NV 89119-3605 |
| **Electronic copy provided to:** | Erica Chee<br>Ronald Duarte |

| | |
|---|---|
| **Entity:** | Sciplay Corporation<br>Entity ID Number  3886253 |
| **Entity Served:** | Sciplay Corp. |
| **Title of Action:** | Hannelore Boorn vs. Scientific Games Corp. |
| **Matter Name/ID:** | Hannelore Boorn vs. Scientific Games Corp. (12998779) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Fayette County Circuit Court, KY |
| **Case/Reference No:** | 22-CI-02686 |
| **Jurisdiction Served:** | Nevada |
| **Date Served on CSC:** | 09/23/2022 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | Secretary of State in KY on 09/20/2022 |
| **How Served:** | Certified Mail |
| Sender Information: | Mehr Fairbanks Trial Lawyers, PLLC<br>859-225-3731 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com



<table>
<tr><td>Michael G. Adams<br>Secretary of State</td><td><b>Commonwealth of Kentucky</b><br><b>Office of the Secretary of State</b></td><td>Summons Division<br>PO BOX 718<br>FRANKFORT, KY 40602-0718</td></tr>
</table>

September 20, 2022

SCIPLAY CORP.
112 NORTH CURRY STREET
CARSON CITY, NV 89703

FROM:   SUMMONS DIVISION
            SECRETARY OF STATE

RE:      CASE NO: 22-CI-02686

COURT:  Circuit Court Clerk
            Fayette County
            120 N Limestone St
            Lexington, KY 40507
            Phone: (859) 246-2141 OR (859) 246-2142

Legal action has been filed against you in the captioned case.  As provided under
Kentucky law, the legal documents are enclosed.

**Questions regarding this action should be addressed to:**

**(1) Your attorney, or**
**(2) The attorney filing this suit whose name should appear on**
**the last page of the complaint, or**
**(3) The court or administrative agency in which the suit is filed**
**at the clerk's number printed above.**

The Kentucky Secretary of State has NO POWER to make a legal disposition of this
case.  Your responsive pleadings should be filed with the clerk of the court or agency
where the suit is filed and served directly on your opposing party.

No copy of future pleadings need be sent to this office unless you wish us to serve
the pleading under a particular statute or rule and pay for said service.

AOC-E-105        Sum Code: CI
Rev. 9-14

Commonwealth of Kentucky
Court of Justice     Courts.ky.gov

CR 4.02; Cr Official Form 1



**CIVIL SUMMONS**

Case #: **22-CI-02686**
Court:   **CIRCUIT**
County: **FAYETTE**

---

*Plantiff,* **BOORN, HANNELORE VS. SCIENTIFIC GAMES CORP. ET AL,** *Defendant*

TO:  **SCIPLAY CORP.**
     **112 NORTH CURRY STREET**
     **CARSON CITY, NV 89703**

RECEIVED

SEP 2 0 2022

SECRETARY OF STATE

The Commonwealth of Kentucky to Defendant:

You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

Fayette Circuit Clerk
Date: **9/15/2022**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

To: _____

☐ Not Served because: _____

Date: _____, 20_____

_____
Served By

_____
Title

Summons ID: 504494934258250@00001124472
CIRCUIT: 22-CI-02686 Long Arm Statute – Secretary of State
BOORN, HANNELORE VS. SCIENTIFIC GAMES CORP. ET AL



Page 1 of 1

*eFiled*

Package:000002 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000002 of 000018

# EXHIBIT C



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 25635928**
**Date Processed: 09/28/2022**

| | |
|---|---|
| **Primary Contact:** | John L. Cuddihy<br>Light & Wonder Inc. (Formerly Scientific Gaming)<br>6601 Bermuda Rd<br>Las Vegas, NV 89119-3605 |
| **Electronic copy provided to:** | Ronald Duarte<br>Erica Chee |

| | |
|---|---|
| **Entity:** | Scientific Games Corporation<br>Entity ID Number  3735688 |
| **Entity Served:** | Appchi Media Ltd. |
| **Title of Action:** | Hannelore Boorn vs. Scientific Games Corp. |
| **Matter Name/ID:** | Hannelore Boorn vs. Scientific Games Corp. (12998779) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Fayette County Circuit Court, KY |
| **Case/Reference No:** | 22-CI-02686 |
| **Jurisdiction Served:** | Nevada |
| **Date Served on CSC:** | 09/23/2022 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | Secretary of State in KY on 09/20/2022 |
| **How Served:** | Certified Mail |
| Sender Information: | Mehr Fairbanks Trial Lawyers, PLLC<br>859-225-3731 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com



Michael G. Adams
Secretary of State

**Commonwealth of Kentucky**
**Office of the Secretary of State**

Summons Division
PO BOX 718
FRANKFORT, KY 40602-0718

September 20, 2022

APPCHI MEDIA LTD.
112 NORTH CURRY STREET
CARSON CITY, NV 89703

FROM:   SUMMONS DIVISION
    SECRETARY OF STATE

RE:   CASE NO: 22-CI-02686

COURT:  Circuit Court Clerk
    Fayette County
    120 N Limestone St
    Lexington, KY 40507
    Phone: (859) 246-2141 OR (859) 246-2142

Legal action has been filed against you in the captioned case.  As provided under
Kentucky law, the legal documents are enclosed.

**Questions regarding this action should be addressed to:**

  **(1) Your attorney, or**
  **(2) The attorney filing this suit whose name should appear on**
    **the last page of the complaint, or**
  **(3) The court or administrative agency in which the suit is filed**
    **at the clerk's number printed above.**

The Kentucky Secretary of State has NO POWER to make a legal disposition of this
case.  Your responsive pleadings should be filed with the clerk of the court or agency
where the suit is filed and served directly on your opposing party.

No copy of future pleadings need be sent to this office unless you wish us to serve
the pleading under a particular statute or rule and pay for said service.

| AOC-E-105      Sum Code: CI |  | Case #: **22-CI-02686** |
|---|---|---|
| Rev. 9-14 | | Court: **CIRCUIT** |
| Commonwealth of Kentucky<br>Court of Justice    *Courts.ky.gov* | | County: **FAYETTE** |
| CR 4.02; Cr Official Form 1 | **CIVIL SUMMONS** | |

*Plantiff,* **BOORN, HANNELORE VS. SCIENTIFIC GAMES CORP. ET AL**, *Defendant*

TO:  **APPCHI MEDIA LTD.**
     **112 NORTH CURRY STREET**
     **CARSON CITY, NV 89703**

RECEIVED

SEP 2 0 2022

SECRETARY OF STATE

The Commonwealth of Kentucky to Defendant:

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*Vincent Riggs*

Fayette Circuit Clerk
Date: **9/15/2022**

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

  To: _____

☐ Not Served because: _____

Date: _____, 20_____   _____
                                                     Served By

                                                     Title

Summons ID: 504494934258251@00001124473
CIRCUIT: 22-CI-02686 Long Arm Statute – Secretary of State
BOORN, HANNELORE VS. SCIENTIFIC GAMES CORP. ET AL

 Page 1 of 1

*eFiled*

Package:000002 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000002 of 000018

Filed            22-CI-02686    09/15/2022    Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022    /s/Vincent Riggs, Fayette Circuit Clerk

COMMONWEALTH OF KENTUCKY
FAYETTE CIRCUIT COURT
CIVIL ACTION NO. 22-CI- 2686

HANNELORE BOORN
on behalf of herself and all others similarly situated,

PLAINTIFF

v.

**CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL**
*(Electronically Filed)*

SCIENTIFIC GAMES CORP.,
    **Serve:**
    **Scientific Games Corp.**
    **6601 Bermuda Road**
    **Las Vegas, Nevada 89119**

DEFENDANTS

SCIPLAY CORP., and
    **Serve:**
    **Sciplay Corp.**
    **112 North Curry Street**
    **Carson City, Nevada 89703**

APPCHI MEDIA LTD.
    **Serve:**
    **Appchi Media Ltd.**
    **112 North Curry Street**
    **Carson City, Nevada 89703**

********

Plaintiff Hannelore Boorn ("Plaintiff") brings this action on behalf of herself and all

others similarly situated against Defendants Scientific Games Corp., SciPlay Corp., and Appchi

Media Ltd. (collectively, "SciPlay" or "Defendants"). Plaintiff makes the following allegations

pursuant to the investigation of her counsel and based upon information and belief, except as to

the allegations specifically pertaining to herself, which are based on personal knowledge.

**INTRODUCTION**

1.    Defendants own and operate a video game development company. Amongst the

Package:000003 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000003 of 000018

Filed              22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest       22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

games Defendants own and operate are popular virtual casino games, including virtual casino

games[1] (hereinafter, collectively, the "games" or "casino games").

2.      In these casino games, Defendants offer a multitude of electronic versions of slot

machine games.

3.      All of Defendants' casino games operate in essentially the same way.  Defendants

provide a bundle of free "Coins" or "Chips" to first-time visitors of their virtual casinos that can

be used to wager on their slot machine games.  After consumers inevitably lose their initial

allotment of coins, Defendants attempt to sell them additional coins.  For example, purchases

start at $4.99 in Quick Hits Casino Slot Games ("Quick Hits").

4.      Freshly topped off with additional coins, consumers wager to win more coins.

The coins won by consumers playing Defendants' games of chance are identical to the coins that

Defendants sell.  Thus, by wagering 80,000,000 coins that were purchased for $4.99, consumers

have the chance to win millions of additional coins that they would otherwise have to purchase.

5.      These coins permit consumers to have the privilege of playing Defendants'

games.

6.      By operating their virtual casinos, Defendants have violated Kentucky law, which

governs Plaintiff's and the Class's claims, and have illegally profited from tens of thousands of

consumers.  Accordingly, Plaintiff, on behalf of herself and a Class of similarly situated

individuals, brings this lawsuit to recover their losses, as well as costs and attorneys' fees.

---

[1] The casino games include, but are not limited to "Quick Hit Casino Slot Games," "Jackpot
Party Casino Slots," "Gold Fish Casino Slot Games," "88 Fortunes Slots Casino Games,"
"MONOPOLY Slots – Casino Games," "Hot Shot Casino Slot Games" and "Blazing 7s Casino
Slots Online."

Filed              22-CI-02686      09/15/2022      [2]Vincent Riggs, Fayette Circuit Clerk
A true copy attest       22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

Package:000004 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000004 of 000018

Filed          22-CI-02686      09/15/2022     Vincent Riggs, Fayette Circuit Clerk
A true copy attest     22-CI-02686      09/15/2022     /s/Vincent Riggs, Fayette Circuit Clerk

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter of this action as a court of

general jurisdiction.

8.      This Court has personal jurisdiction over Defendants pursuant to KRS § 454.210

(2)(a) because Defendants have transacted business in this Commonwealth and contracted to

supply services or goods in this Commonwealth, and Plaintiff's claims against Defendants arise

from those acts.

9.      Venue is proper in this County pursuant to KRS § 452.450 because a substantial

part of the events or omissions giving rise to the claims asserted herein occurred in this County,

and because the contracts between Plaintiff and Defendants were made and performed in this

County.

## PARTIES

10.     Plaintiff Hannelore Boorn is a natural person and a citizen of the Commonwealth

of Kentucky, residing in Lexington, Kentucky.  Plaintiff started playing Defendant's Quick Hits

casino game in or around November 2015, and made thousands of dollars worth of purchases of

virtual currency, which she subsequently gambled and lost, within the applicable five-year

limitations period.

11.     Defendant Scientific Games Corp. is a corporation organized and existing under

the laws of Nevada, with its principal place of business at 6601 Bermuda Road, Las Vegas,

Nevada 89119.  Scientific Games Corp. conducts business throughout this County, the

Commonwealth of Kentucky, and the United States.

12.     Defendant SciPlay Corp. is a corporation organized and existing under the laws of

Delaware, with its principal place of business at 112 North Curry Street, Carson City, Nevada

Package:000005 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000005 of 000018

Filed                  22-CI-02686       09/15/2022       Vincent Riggs, Fayette Circuit Clerk
A true copy attest        22-CI-02686       09/15/2022       /s/Vincent Riggs, Fayette Circuit Clerk

89703. Sciplay Corp. conducts business throughout this County, the Commonwealth of

Kentucky, and the United States.

13.     Defendant Appchi Media Ltd. is a subsidiary of Scientific Games Corp., and

conducts business throughout this County, the Commonwealth of Kentucky, and the United

States.

**FACTUAL ALLEGATIONS**

**Free-to-Play and the New Era of Online Gambling**

14.     The proliferation of internet-connected mobile devices has led to the growth of

so-called "free-to-play" videogames. With free-to-play games, developers encourage consumers

to download and play games for free while selling many low-cost items within the game itself.

Developers aim to recoup their costs (and make a profit) by selling thousands of "in-game" items

that start at $0.99 (purchases known as "micro-transactions") instead of charging an up-front fee.

15.     The free-to-play model has become particularly attractive to developers of games

of chance (e.g., slot machine mobile video games), because it allows them to generate huge

profits. In 2012, free-to-play games of chance generated over $1.6 billion in worldwide revenue.

16.     With free-to-play games of chance, developers have begun exploiting the same

psychological triggers as brick-and-mortar casinos. As one respected videogame publication put

it:

> If you hand someone a closed box full of promised goodies, many
> will happily pay you for the crowbar to crack it open. The
> tremendous power of small random packs of goodies has long been
> known to the creators of physical collectible card games and
> companies that made football stickers a decade ago. For some ... the
> allure of a closed box full of goodies is too powerful to resist.
> Whatever the worth of the randomised [sic] prizes inside, the offer
> of a free chest and the option to buy a key will make a small fortune
> out of these personalities. For those that like to gamble, these crates

Filed                  22-CI-02686       09/15/2022       Vincent Riggs, Fayette Circuit Clerk
A true copy attest        22-CI-02686       09/15/2022       /s/Vincent Riggs, Fayette Circuit Clerk

4

Package:000006 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000006 of 000018

Filed                22-CI-02686        09/15/2022        Vincent Riggs, Fayette Circuit Clerk
A true copy attest        22-CI-02686        09/15/2022        /s/Vincent Riggs, Fayette Circuit Clerk

Package:000007 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000007 of 000018

often offer a small chance of an ultra-rare item."[2]

17.     *Game Informer*, another respected videogame magazine, reported on the rise (and danger of) micro-transactions in free-to-play games and concluded:

> [M]any new mobile and social titles target small, susceptible populations for large percentages of their revenue. If ninety-five people all play a [free-to-play] game without spending money, but five people each pour $100 or more in to obtain virtual currency, the designer can break even. These five individuals are what the industry calls whales, and we tend not to be too concerned with how they're being used in the equation. While the scale and potential financial ruin is of a different magnitude, a similar profitability model governs casino gambling.[3]

18.     Academics have also studied the socioeconomic effect free-to-play games have on consumers. In one study, the authors compiled several sources analyzing free-to-play games of chance (called "casino" games below) and stated that:

> [Researchers] found that [free-to-play] casino gamers share many similar sociodemographic characteristics (e.g., employment, education, income) with online gamblers. Given these similarities, it is perhaps not surprising that a strong predictor of online gambling is engagement in [free-to-play] casino games. Putting a dark line under these findings, over half (58.3%) of disordered gamblers who were seeking treatment stated that social casino games were their first experiences with gambling.
> ...
> According to [another study], the purchase of virtual credits or virtual items makes the activity of [free-to-play] casino gaming more similar to gambling. Thus, micro-transactions may be a crucial predictor in the migration to online gambling, as these players have now crossed a line by paying to engage in these activities. Although, [sic] only 1–5% of [free-to-play] casino gamers make micro- transactions, those who purchase virtual credits spend

---

[2] PC Gamer, *Microtransactions: the good, the bad and the ugly*, http://www.pcgamer.com/microtransactions-the-good-the-bad-and-the-ugly/ (last visited September 1, 2022)

[3] Game Informer, *How Microtransactions Are Bad For Gaming - Features - www.GameInformer.com*, https://www.gameinformer.com/b/features/archive/2012/09/12/how-microtransactions-are-bad-for-gaming.aspx (last visited September 1, 2022)

Filed                22-CI-02686        09/15/2022        5 Vincent Riggs, Fayette Circuit Clerk
A true copy attest        22-CI-02686        09/15/2022        /s/Vincent Riggs, Fayette Circuit Clerk

Filed          22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

an average of $78. Despite the limited numbers of social casino gamers purchasing virtual credits, revenues from micro-transactions account for 60 % of all [free-to-play] casino gaming revenue. Thus, a significant amount of revenue is based on players' desire to purchase virtual credits above and beyond what is provided to the player in seed credits.[4]

19.    The same authors looked at the link between playing free-to-play games of chance and gambling in casinos. They stated that "prior research indicated that winning large sums of virtual credits on social casino gaming sites was a key reason for [consumers'] migration to online gambling," yet the largest predictor that a consumer will transition to online gambling was "micro-transaction engagement." In fact, "the odds of migration to online gambling were approximately eight times greater among people who made micro-transactions on [free-to-play] casino games compared to [free-to-play] casino gamers who did not make micro-transactions."

## I.    A Brief Introduction to Defendants and Their Games

20.    Defendants are leaders in the interactive gaming industry and have been in the casino and gambling business for over 70 years.

21.    Consumers can play Defendants' casino games by downloading one of their many mobile casino game apps on Apple iOS and Android devices, or by playing the online casino games on Facebook.

22.    Defendants have made large profits through their online gambling games. For example, according to its press release, Scientific Games generated over $823 million in the fourth quarter of 2017 alone.[5] As explained further below, however, the revenue Defendants

---

[4] Hyoun S. Kim, Michael J. A. Wohl, *et al.*, *Do Social Casino Gamers Migrate to Online Gambling? An Assessment of Migration Rate and Potential Predictors*, Journal of gambling studies / co-sponsored by the National Council on Problem Gambling and Institute for the Study of Gambling and Commercial Gaming (Nov. 14, 2014), *available at* http://link.springer.com/content/pdf/10.1007%2Fs10899-014-9511-0.pdf (last visited Sept. 1, 2022).

[5] *Scientific Games Reports Fourth Quarter and Full Year 2017 Results,* https://www.prnewswire.com/newsreleases/ scientific-games-reports-fourth-quarter-and-full-year-2017-results-300606074.html (last visited May. 11.

---

Filed          22-CI-02686      09/15/2022      6Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

Package:000008 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000008 of 000018

Filed            22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

receive from their online casino games are the result of operating unlawful games of chance camouflaged as innocuous videogames.

**II.    Defendant's Online Casino Games Are Illegal Gambling Under Kentucky Law**

23.    Consumers visiting the games for the first time are awarded an allocation of free virtual currency (hereinafter "Coins" or "Chips").  These free sample chips offer a taste of gambling and are designed to encourage players to get hooked and buy more chips for real money.

24.    During gameplay, Defendant displays various special offers to consumers via a pop-up screen in order to entice consumers to purchase additional chip at a discounted price. For example, Defendant's Quick Hits casino game's electronic store sells discounted chips ranging from $4.99 to $99.99.



Filed            22-CI-02686      09/15/2022      [7]Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

Package:000009 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000009 of 000018

Filed                22-CI-02686        09/15/2022        Vincent Riggs, Fayette Circuit Clerk
A true copy attest    22-CI-02686        09/15/2022        /s/Vincent Riggs, Fayette Circuit Clerk



25.     After they begin playing, consumers quickly lose their initial allotments of Coins. Immediately thereafter, Defendants inform them that they have insufficient coins to place a wager, which prevents them from continuing to play the game. For example, in Quick Hits, users are presented with the below message:

Package : 000010 of 000018                Presiding Judge: HON. JULIE M. GOODMAN (622397)                Package : 000010 of 000018

Filed                22-CI-02686      09/15/2022        Vincent Riggs, Fayette Circuit Clerk
A true copy attest         22-CI-02686       09/15/2022         /s/Vincent Riggs, Fayette Circuit Clerk



26.     To continue playing the games, consumers must purchase additional coins.[6] For example, consumers are presented with options to purchase additional Coins at prices ranging from $4.99 for 30,000,000 Coins to $99.99 for 2,700,000 Coins in Quick Hits. *See supra* ¶ 24 (screenshot).

27.     Armed with their new Coins, consumers can resume playing Defendants' games. If they win Coins, players can use the Coins to continue playing the games. Inevitably, however, customers eventually lose their entire Coin balance and must spend more money to continue playing.

---

[6] Following Defendants' statewide settlement of analogous Washington-based claims in *Reed v. Scientific Games Corp.*, 2:18-cv-00565-RSL, which does not release any of the claims asserted by Plaintiff here, Defendant has instituted what is referred to in the industry as "continuous play," where when a player runs out of Coins, they are immediately offered a small allotment of additional Coins. Plaintiff does not concede, at this point, that this change (or any other relief pursuant to the *Reed* settlement) is curative. But regardless, Defendants' games did not have a "continuous play" option for the overwhelming majority of the applicable five-year limitations period.

Filed                22-CI-02686      09/15/2022      9 Vincent Riggs, Fayette Circuit Clerk
A true copy attest         22-CI-02686       09/15/2022         /s/Vincent Riggs, Fayette Circuit Clerk

Package:000011 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000011 of 000018

Filed           22-CI-02686      09/15/2022       Vincent Riggs, Fayette Circuit Clerk
A true copy attest     22-CI-02686      09/15/2022       /s/Vincent Riggs, Fayette Circuit Clerk

28.     The decision to sell chips by the thousands isn't an accident. Rather, Defendant attempts to lower the perceived cost of the chips (costing just a fraction of a penny per chip) while simultaneously maximizing the value of the award (awarding millions of chips in jackpots), further inducing consumers to bet on its games.

29.     To begin wagering, players select the "Bet" that will be used for a spin, as illustrated below, which shows one of Defendant's Quick Hits slot machine games. Defendant allows players to increase or decrease the amount he or she can wager and ultimately win (or lose).



30.     Once a consumer spins the slot machine by pressing a "Spin" button, none of Defendants' games allow (or call for) any additional user action. Instead, the consumer's device communicates with and sends information to Defendants' servers. Defendants' servers then execute the games' algorithms that determine the spin's outcome. Notably, none of Defendants' games depend on any amount of skill to determine their outcomes – all outcomes are based entirely on chance.

31.     If a player makes a wager the player can either win and be awarded additional coins or lose and lose the coins. For example, a player may make a 10,000-coin wager and win 300,000 coins. In other words, absent the win, the 300,000 coins would have cost the player approximately $0.75 to buy. Now, however, the newly won coins provide the player additional free plays.

32.     Consumers can continue playing with the coins that they won, or they can exit the game and return at a later time to play because Defendants maintain win and loss records and account balances for each consumer. Indeed, once Defendants' algorithms determine the

Filed           22-CI-02686      09/15/2022       Vincent Riggs, Fayette Circuit Clerk
A true copy attest     22-CI-02686      09/15/2022       /s/Vincent Riggs, Fayette Circuit Clerk

Package:000012 of 000016

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000012 of 000016

Filed          22-CI-02686     09/15/2022        Vincent Riggs, Fayette Circuit Clerk
A true copy attest        22-CI-02686        09/15/2022        /s/Vincent Riggs, Fayette Circuit Clerk

outcome of a spin and Defendants display the outcome to the consumer, Defendants adjust the

consumer's account balance. Defendants keep records of each wager, outcome, win, and loss for

every player of the games.

<h2 style="text-align:center">CLASS ALLEGATIONS</h2>

33.    Plaintiff seeks to represent a class defined as all individuals who, in the

Commonwealth of Kentucky, spent $5.00 or more within a 24-hour period in one or more of

Defendants' casino games during the applicable limitations period. (the "Class").

34.    Specifically excluded from the Class are Defendants, Defendants' officers,

directors, agents, trustees, parents, children, corporations, trusts, representatives, employees,

principals, servants, partners, joint ventures, or entities controlled by Defendants, and their heirs,

successors, assigns, or other persons or entities related to or affiliated with Defendants and/or

Defendants' officers and/or directors, the judge assigned to this action, and any member of the

judge's immediate family.

35.    Subject to additional information obtained through further investigation and

discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or

amended complaint.

36.    **Numerosity**. On information and belief, tens of thousands of consumers fall into

the definition of the Class. Members of the Class can be identified through Defendants' records,

discovery, and other third-party sources.

37.    **Commonality and Predominance**. Common questions of law and fact exist as

to all members of the Class and predominate over any questions affecting only individual Class

members. These common legal and factual questions include, but are not limited to, the

following:

Package:000013 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000013 of 000018

Filed          22-CI-02686     09/15/2022     ¹ Vincent Riggs, Fayette Circuit Clerk
A true copy attest        22-CI-02686        09/15/2022        /s/Vincent Riggs, Fayette Circuit Clerk

Filed             22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest        22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

(a)     Whether Plaintiff and Class members' play on Defendants' virtual casino games constitutes gambling under Kentucky law;

(b)     Whether Plaintiff and the Class lost money gambling to Defendants as defined by KRS § 372.010 *et. seq.*; and

(c)     Whether Plaintiff and the Class are entitled to recover their monies spent on Defendants' casino games pursuant to KRS § 372.020.

38.     **Typicality**.  Plaintiff's claims are typical of the claims of the other members of the Class in that, among other things, all Class members were similarly situated and were comparably injured through Defendants' wrongful conduct as set forth herein.  Further, there are no defenses available to Defendants that are unique to Plaintiff.

39.     **Adequacy of Representation**.  Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class.

40.     **Superiority**.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense of individual litigation of their claims against Defendants.  It would thus be virtually impossible for the Class obtain effective redress for the wrongs committed against the members on an individual basis.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also

Package:000014 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000014 of 000018

Filed             22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest        22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

increase the delay and expense to all parties and the court system from the issues raised by this

action. By contrast, the class action device provides the benefits of adjudication of these issues

in a single proceeding, economies of scale, and comprehensive supervision by a single court, and

presents no unusual management difficulties under the circumstances.

## CAUSES OF ACTION

### COUNT I
### Violation of KRS § 372.010, *et. seq.*
### (On Behalf Of Plaintiff And The Class)

41.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

42.    The Commonwealth of Kentucky's "Recovery of money lost at gambling" statute,

KRS § 372.020, provides a losing gambler with a first-party cause of action to recover any losses

suffered. It reads:

> If any person loses to another at one (1) time, or within twenty-four
> (24) hours, five dollars ($5) or more, or anything of that value, and
> pays, transfers or delivers it, the loser or any of his creditors may
> recover it, or its value, from the winner, or any transferee of the
> winner, having notice of the consideration, by action brought within
> five (5) years after the payment, transfer or delivery. Recovery may
> be had against the winner, although the payment, transfer or delivery
> was made to the endorsee, assignee, or transferee of the winner. If
> the conveyance or transfer was of real estate, or the right thereto, in
> violation of KRS 372.010, the heirs of the loser may recover it back
> by action brought within two (2) years after his death, unless it has
> passed to a purchaser in good faith for valuable consideration
> without notice.

KRS § 372.020.

43.    Defendants' casino games constitute gambling because the players provide

consideration (e.g., purchase coins and wager the coins) and by an element of chance (e.g., by

spinning a virtual slot machine) create a right to credits and/or other things of value (e.g.,

additional coins that would otherwise be purchased for cash and that award additional replays).

Package:000015 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000015 of 000018

Filed          22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

44.     As such, Plaintiff and the Class gambled when they purchased coins to wager at Defendants' games. Plaintiff and each member of the Class staked money, in the form of coins purchased with money, at Defendants' games of chance (e.g., Defendants' slot machines within the games) for the chance of winning additional things of value (e.g., coins that grant additional free plays).

45.     The virtual currency Plaintiff and the Class had the chance of winning in Defendants' virtual casino games are "things of value" under Kentucky law because they are credits that involve the extension of entrainment and a privilege of playing a game without charge.

46.     As a direct and proximate result of Defendants' operation of their games, Plaintiff and each member of the Class have lost money wagering at Defendants' games of chance. Plaintiff, on behalf of herself and the Class, seeks an order (1) requiring Defendants to cease operation of their gambling devices; and/or (2) awarding the recovery of all lost monies, interest, and reasonable attorneys' fees, expenses, and costs to the extent allowable.

**COUNT II**
**Unjust Enrichment.**
**(On Behalf Of Plaintiff And The Class)**

47.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

48.     Plaintiff and the Class have conferred a benefit upon Defendant in the form of the money Defendant received from them for the purchase of Coins to wager at Defendant's online gambling games.

49.     Defendant appreciates and/or has knowledge of the benefits conferred upon it by Plaintiff and the Class.

50.     Under principles of equity and good conscience, Defendant should not be

Package : 000016 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000016 of 000018

Filed          22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

Filed          22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

permitted to retain the money obtained from Plaintiff and the members of the Class, which

Defendant has unjustly obtained as a result of its unlawful operation of unlawful online gambling

games. As it stands, Defendant has retained millions of dollars in profits generated from its

unlawful games of chance and should not be permitted to retain those ill-gotten profits.

51.    Accordingly, Plaintiff and the Class seek full disgorgement and restitution of any

money Defendant has retained as a result of the unlawful and/or wrongful conduct alleged

herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks

judgment against Defendants, as follows:

      (a)    For an order certifying this action as a class action, appointing Plaintiff as
Class Representative, and appointing Plaintiff's counsel as Class Counsel;

      (b)    For compensatory damages on all applicable claims and in an amount to
be proven at trial;

      (c)    For restitution on all applicable claims and in an amount to be proven at
trial;

      (d)    For an order requiring Defendants to disgorge, restore, and return all
monies wrongfully obtained together with interest calculated at the
maximum legal rate;

      (e)    For an order enjoining the wrongful conduct alleged herein;

      (f)    For other appropriate injunctive and other equitable relief;

      (g)    For costs;

      (h)    For pre-judgment and post-judgment interest as provided by law;

      (i)    For attorneys' fees under the account contracts, the common fund
doctrine, and all other applicable rules and law; and

Package:000017 of 000018

Presiding Judge: HON. JULIE M. GOODMAN (622397)

Package : 000017 of 000018

Filed          22-CI-02686      09/15/2022      Vincent Riggs, Fayette Circuit Clerk
A true copy attest      22-CI-02686      09/15/2022      /s/Vincent Riggs, Fayette Circuit Clerk

(j)    For such other relief as the court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  September 15, 2022                    Respectfully submitted,

                                              /s/ *Philip G. Fairbanks*
                                              PHILIP G. FAIRBANKS
                                              **Mehr Fairbanks Trial Lawyers, PLLC**
                                              201 West Short Street, Suite 800
                                              Lexington, Kentucky 40507
                                              Telephone:  859-225-3731
                                              Facsimile:  859-225-3830
                                              pgf@austinmehr.com

                                              and

                                              **BURSOR & FISHER, P.A.**
                                              Philip L. Fraietta*
                                              Alec M. Leslie*
                                              Matthew A. Girardi*
                                              Julian C. Diamond*
                                              888 Seventh Avenue
                                              New York, NY 10019
                                              Telephone: (646) 837-7150
                                              Facsimile: (212) 989-9163
                                              E-Mail:  pfraietta@bursor.com
                                                       aleslie@bursor.com

                                              *Attorneys for Plaintiff and the Putative Class*

                                              * *Pro hac vice* application forthcoming



MICHAEL G. ADAMS
SECRETARY OF STATE
P.O. Box 718
Frankfort, Kentucky 40602-0718

☑ **REGISTER TO VOTE**

7021 1970 0000 1762 6674



neopost
09/20/2022
US POSTAGE $009.17⁰

FIRST-CLASS MAIL

ZIP 40601
041M12250918

**APPCHI MEDIA LTD.**
**112 NORTH CURRY STREET**
**CARSON CITY, NV 89703**

# EXHIBIT D



**Kentucky**
COURT OF JUSTICE

22-CI-02686

### *BOORN, HANNELORE VS. SCIENTIFIC GAMES CORP. ET AL*

**FAYETTE CIRCUIT COURT**

Filed on **09/15/2022** as **TORT - OTHER** with **HON. JULIE M. GOODMAN**

**\*\*\*\* NOT AN OFFICIAL COURT RECORD \*\*\*\***

| Case Memo | 22-CI-02686 |
|---|---|

*TORT OTHER;*

| Parties | 22-CI-02686 |
|---|---|

**APPCHI MEDIA LTD.** as **DEFENDANT / RESPONDENT**

**Address**

112 NORTH CURRY STREET
CARSON CITY NV 89703

**Summons**

**CIVIL SUMMONS** issued on **09/15/2022** by way of **LONG ARM STATUTE - SOS**
*GREEN CARD RETURNED 09/29/22 FOR SERVICE ON 09/20/22*

**BOORN, HANNELORE** as **PLAINTIFF / PETITIONER**

**SCIENTIFIC GAMES CORP.** as **DEFENDANT / RESPONDENT**

**Address**

6601 BERMUDA ROAD
LAS VEGAS NV 89119

**Summons**

**CIVIL SUMMONS** issued on **09/15/2022** by way of **LONG ARM STATUTE - SOS**
*SOS SERVED 9/22/2022RETD SERVED ON DEF. FROM SOS R. FERRARS ON 9- 30-22*

**SCIPLAY CORP.** as **DEFENDANT / RESPONDENT**

**Address**

112 NORTH CURRY STREET
CARSON CITY NV 89703

**Summons**

**CIVIL SUMMONS** issued on **09/15/2022** by way of **LONG ARM STATUTE - SOS**
*GREEN CARD RETURNED 09/29/22 FOR SERVICE ON 09/20/22*

**FAIRBANKS, PHILIP** as **ATTORNEY FOR PLAINTIFF**

**Address**

MEHR, FAIRBANKS & PETERSON
201 WEST SHORT STREET, SUITE 800
LEXINGTON KY 40507

| Documents | 22-CI-02686 |
|---|---|

**COMPLAINT / PETITION** filed on **09/15/2022**

| Images | 22-CI-02686 |
|---|---|

**COMPLAINT / PETITION** filed on **09/15/2022**   *Page(s): 16*

**SUMMONS** filed on **09/15/2022**   *Page(s): 1*

**SUMMONS** filed on **09/15/2022**   *Page(s): 1*

**SUMMONS** filed on **09/15/2022**   *Page(s): 1*

**COURTESY FINANCIAL TRANSACTION REPORT** filed on **09/15/2022**   *Page(s): 1*

**RECEIPT** filed on **09/19/2022**   *Page(s): 0*

**\*\*\*\* End of Case Number : 22-CI-02686 \*\*\*\***